# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2026

Lyle W. Cayce
Clerk

No. 25-40088

_____

United States of America,

*Plaintiff—Appellee*,

*versus*

Eric Reed Marascio,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:22-CR-110-6

_____

Before Duncan, Oldham, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Eric Reed Marascio conspired to defraud the Paycheck Protection Program ("PPP"). In total, the conspirators received $3.5 million in phony loans. While several pleaded guilty, Marascio went to trial. A jury found him guilty of conspiracy to commit wire fraud and conspiracy to commit money laundering. Marascio challenges both the sufficiency of the evidence against

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

him and an allegedly improper comment on co-conspirator guilt by the prosecutor. We AFFIRM.

I

We begin with the conspiracy. One conspirator, Andrew Moran, submitted loan applications on behalf of a group, using the names and financial information of more than a dozen individuals. In return for a 10% share of any proceeds, Moran claimed hundreds of thousands in fake business expenses and inflated payroll on their behalf. The conspirators invested a portion of the fraudulent loan proceeds with a purported foreign exchange trader named Jonathon Spencer. Spencer promised astronomical returns on invested funds. The group thought the returns would let them pay back the loans and make a tidy profit.

In June 2020, Michael Hill told Marascio that Moran "got [him] a forgivable loan" with "literally three pieces of information." Interested, Marascio gave Moran his personal information and the address of Marascio's business, the Hazelnut Café. Moran then submitted an application for PPP loans on Marascio's behalf, claiming the Hazelnut Café employed nine employees and had a monthly payroll over $90,298. That was false, as the Hazelnut Café had just one employee: Marascio himself. But the application was accepted anyway, and Marascio received a PPP loan for $225,745. In keeping with the scheme, Marascio paid a 10% fee to Moran and invested $150,000 of the loan proceeds with Spencer. Another $30,000 went to a new pickup truck for Marascio.

After receiving his loan, Marascio asked Moran to pay him to recruit more loan applicants. Moran agreed. This arrangement soon bore fruit. Marascio recruited Hector Reyes to participate in the conspiracy, and Moran paid Marascio $5,000.

No. 25-40088

A grand jury indicted Marascio and 17 others for conspiracy to commit wire fraud and money laundering. While most of the alleged co-conspirators pleaded guilty, Marascio and another man, Cord Newman, went to trial. The jury heard testimony from several of those who pleaded guilty, including Hector Reyes and Michael Hill. The jury deliberated for less than an hour and a half before returning guilty verdicts for Marascio and Newman.

Marascio timely appealed.

## II

Marascio appears to concede that the Government proved there was an agreement to defraud the PPP. But Marascio nonetheless argues that none of the evidence showed his "knowledge of the unlawful purposes of the agreements or that [Marascio] acted with a specific intent to defraud." Marascio also seizes on the fact that Moran took steps to conceal the fraud and "stay a little under the radar." ROA.1532. From this, Marascio seems to draw the implication that Moran intended to keep the fraud from the other conspirators, including Marascio. Confusingly, Marascio also argues that Moran was innocent, as he purportedly "did not know it was illegal to apply for money with lies and then have the money wired to his account." ROA.1627–28. We review Marascio's sufficiency argument *de novo*, but with "substantial deference to the jury verdict." *United States v. Perry*, 35 F.4th 293, 316 (5th Cir. 2022) (quotation omitted).

The record contains ample support for Marascio's specific intent to engage in wire fraud. True, the Government did not present a direct statement from Marascio that he knew the scheme was illegal. But that was not its burden. Rather, the Government could rely on evidence that is "circumstantial rather than direct" to prove its case, and the jury was "free to choose among reasonable constructions of the evidence." *United States v. Mitchell*, 484 F.3d 762, 768 (5th Cir. 2007) (quotation omitted).

No. 25-40088

A reasoned construction of the evidence shows Marascio knew that the scheme was unlawful. Marascio sought a PPP loan via Moran's pay-to-play model, spent none of the funds on paychecks, invested most for personal gain with Spencer, blew through the rest on trinkets, and later offered to recruit other fraudsters for a fee. Co-conspirator Hill's testimony revealed the obvious: Everyone understood this was a plan "to get PPP money and invest" it for personal gain, then pay the loans back with their ill-gotten gains, "no harm, no foul." That is more than enough evidence for a jury to reasonably conclude Marascio, as an active participant in the fraud, knew that he was part of a fraudulent scheme.

## III

Next, Marascio challenges a statement the prosecutor made at trial.

During closing arguments, counsel for Marascio's co-defendant (Newman) tried to pin the whole scheme on Moran. Relying on testimony from the guilty-pleading co-conspirators, the attorney claimed that Moran had hoodwinked the group into believing the loans were lawful. In the Government's closing, the prosecutor posed a rhetorical question: "Why did they plead guilty, each of them?" The defense immediately requested a bench conference and claimed that the question was "impermissible argument." The court told the prosecutor to "move on," and the attorney did so. The defense did not object or request a ruling.

The parties assume this argument is preserved and urge us to apply an abuse of discretion standard. "It is certainly true that parties in litigation cannot waive the applicable standard of review." *Cargill v. Garland*, 57 F.4th 447, 466 (5th Cir. 2023) (en banc), *aff'd*, 602 U.S. 406 (2024). So, it is our duty to ensure the claim was properly preserved and to determine the appropriate standard of review in all cases.

Here, it is unclear that the claim was properly preserved. When the Government invoked the guilty pleas of several co-conspirators, Newman's lawyer requested a bench conference and stated that he believed the argument was "illegal." But neither defendant formally objected to the Government's statement, nor did either obtain a ruling on any objection from the district court. Without an objection or a ruling, we would ordinarily treat Marascio's argument as unpreserved and review only for plain error. *United States v. Hager*, 879 F.3d 550, 556 (5th Cir. 2018) (per curiam). Here, however, "[w]e need not decide which of these two standards is the most appropriate, because . . . we find that the district court's" purported error "was neither an abuse of discretion, nor plain error." *United States v. Thames*, 214 F.3d 608, 613 (5th Cir. 2000).

Propriety first. In deciding "whether a court erred in admitting evidence of a co-conspirator witness's conviction," four factors are relevant: "(1) the presence or absence of a limiting instruction; (2) whether there was a proper evidentiary purpose for introduction of the plea; (3) whether the plea was improperly emphasized or used as substantive evidence of guilt; and (4) whether defense counsel invited the plea's introduction into evidence." *United States v. Roland*, 130 F.4th 480, 486 (5th Cir.), *cert. denied*, 146 S. Ct. 261 (2025). Marascio offers a threadbare argument, stating in one paragraph of analysis that "evidence about the conviction of a co[-]conspirator is not admissible as substantive proof of the guilt of a defendant," and that the Government "engaged in . . . guilt-by-association argument." Blue Br. at 29. Marascio does not mention, much less apply, the four relevant factors. In any event, we weigh the factors ourselves, and find that at least three favor the Government.

First, the district court gave a limiting instruction on co-conspirator guilty pleas. The district court instructed the jury that "[t]he fact that an accomplice has entered a plea of guilty to the offense charged is not evidence

of the guilt of any other person." ROA.1704. True, that instruction was not in direct response to the Government's closing statement, but that is only because neither defendant objected or requested a ruling on the statement when it was made. In any event, the court clearly instructed the jury not to rely on the co-conspirators' guilty pleas as evidence of guilt, and "[t]he almost invariable assumption is that jurors follow such instructions." *United States v. Moparty*, 11 F.4th 280, 292 (5th Cir. 2021) (quotation omitted).

Turning to the evidentiary purpose of the statement, the pleas were mentioned to refute a particular argument from the defense. In response to Newman's contention that only Moran knew the PPP scheme was unlawful, the Government asked how that narrative could be squared with the co-conspirators pleading guilty to a knowing offense. The point was not to paint Marascio as guilty by-way-of his compatriots, but to show that the total ignorance theory pressed by the defense made no sense. *See id.* at 293 (noting "government could preemptively introduce" a co-conspirator guilty plea "to thwart a defense strategy of painting [the co-conspirator] as the primary culprit").

As to the emphasis placed on the guilty pleas, the Government only mentioned the pleas once during the entire trial. We do not see a single rhetorical question as key to the Government's case, which instead turned on testimony from the co-conspirators showing Marascio's active participation in and knowledge of the fraud scheme.

The fourth factor is a closer call. A defendant usually "invite[s] the plea's introduction" by expressly mentioning the plea first. *Roland*, 130 F.4th at 486. The defense may seek to impeach the reliability of the co-conspirator as a witness, for instance, by emphasizing their criminal deeds. *See United States v. Delgado*, 401 F.3d 290, 300 (5th Cir. 2005). In that sense, the fourth factor functions as something of a "turnabout is fair play" principle. As

we've previously put it, "a defendant will not be heard to complain of [a guilty plea's] admission when he instigates such admission" or invokes the plea "by frequent, pointed, and direct references." *United States v. Leach*, 918 F.2d 464, 467 (5th Cir. 1990). Here, neither defendant mentioned the guilty plea of a co-conspirator. Nor did the defense indirectly rely on those pleas to smear the co-conspirators' testimony. Instead, the defense focused on reframing the conspiracy, with Moran as the puppet master of the group. While that argument is indirectly undermined by the fact that some of the co-conspirators pleaded guilty, it's not the sort of "instigat[ion]" we have weighed against the defense. *Ibid.*

Because three of the four factors clearly favor the Government, and the fourth factor is ambiguous, we hold the district court did not improperly admit the existence of the co-conspirators' guilty pleas.

Finally, even if the statement were improper, that changes nothing. Marascio must still show the statement's introduction "substantially impaired" his rights. That requires "assess[ing] the magnitude of the statement's prejudice, the effect of any cautionary instruction given, and the strength of the evidence of the defendant's guilt." *United States v. Alaniz*, 726 F.3d 586, 615 (5th Cir. 2013) (quotation omitted). Going in order, it is unclear whether Marascio could have suffered any prejudice. The single rhetorical question over why men with no knowledge of a fraud's illegality would plead guilty to that fraud was unlikely to sway the jury against Marascio. Marascio points out that the Government's case relied in large part on the co-conspirators acting as witnesses. But that is not the same thing as relying on the co-conspirators' *guilty pleas*. As to instructions, Marascio admits the district court warned the jury not to treat a co-conspirator's guilty plea as substantive evidence of guilt, and that "this factor weighs against relief." Blue Br. at 31. Finally, plenty of evidence supported Marascio's conviction.

In sum, the single mention of co-conspirators' pleas was not improper, and even if it were improper, it did not substantially impair Marascio's rights. We reject Marascio's challenge to his conviction based on the statement's inclusion.

AFFIRMED.